**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**RACHAEL BONDI,** individually and on behalf of others similarly situated,

Plaintiff,

v.

**DUNKIN' BRANDS, INC.** and **INSPIRE BRANDS, INC.,**

Defendant.

Case No. _______________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Rachael Bondi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendants Dunkin' Brands, Inc. and Inspire Brands, Inc. (collectively, "Dunkin" or "Defendant(s)") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## NATURE OF THE ACTION

1. This class action challenges Defendant's false and misleading marketing of its allulose-sweetened Dunkin' Zero beverages, which Defendants market and sell as containing "0g of sugar" and "zero sugar" (the "Products").[1]

[1] The Products are comprised of every beverage sold under the Dunkin' Zero name, including the Blackberry Tangerine, Tropical Mango, Juicy Peach, Glamberry (Blackberry Tangerine + Juicy Peach), Sunzest (Tropical Mango + Juicy Peach), and Blushpop (Blackberry Tangerine + Tropical Mango) varieties introduced on March 2026, and the Watermelon Lime, Splashberry, Heatwave, and Melon Paradise varieties added thereafter, in all sizes. *See* Dunkin', Dunkin' Zero, https://www.dunkindonuts.com/menu/categories/iced-refreshers-specialtytea/specialty/dunkin-zero/ (last visited Sept. 23, 2026); Dunkin', Allergen and Ingredient Guide (Aug. 19, 2026) ("Ingredient Guide"), https://www.dunkindonuts.com/nutrition/ (last visited Oct. 15, 2026). Discovery may reveal that additional products of Defendants are within the scope of Plaintiff's Complaint. Accordingly, Plaintiff reserves the right to amend her Complaint to add additional products of Defendants.

2. Plaintiff and class members, who have purchased these Products, bring this Action because of material representations which are false and misleading: Defendant markets and advertises the Products as "Zero Sugar" (collectively, the "Representations"). However, unbeknownst to reasonable consumers, the Products do in fact contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal labeling standards, which Illinois and Massachusetts law incorporate. The allulose is not present in trace amounts—on information and belief, each medium Product contains approximately 8 to 10 grams of allulose, while each large Product contains approximately 11 to 13 grams.

3. The Zero Sugar Representations are express nutrient content claims under 21 C.F.R. § 101.13(b) and (b)(1). "Zero sugar" is among the terms expressly defined by 21 C.F.R. § 101.60(c)(1), and "0g of sugar" and "zero grams of sugar" are reasonable variations or synonyms of that term. 21 C.F.R. § 101.13(b)(4). Section 101.60(c)(1) permits such a claim only if, among other things, the food contains less than 0.5 grams of sugars, as defined in 21 C.F.R. § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving, and contains no ingredient that is a sugar unless that ingredient is followed by an asterisk disclosing that it adds only a trivial amount of sugar. Defendants nevertheless add approximately 8 to 10 grams of allulose to each medium Product and 11 to 13 grams of allulose to each large Product and make no such disclosure.

4. The Zero Sugar Representations are material to consumers seeking to limit or avoid sugar consumption. By advertising the Products as containing no sugar, Defendants convey that the Products offer an alternative to beverages containing sugar, despite their inclusion of allulose. These representations are particularly significant to consumers who consider sugar content when making purchasing decisions. As a result, Plaintiff and Class Members purchased Products they

otherwise would not have purchased, or paid more than they otherwise would have paid, had they known the Products contained sugar.

5. Apart from any regulation, Defendants' Zero Sugar Representations are also deceptive by their nature. A reasonable consumer who is told that a beverage contains "0g of sugar" understands that the beverage contains no sugar. That understanding is incompatible with a beverage sweetened with approximately 8 to 13 grams of a monosaccharide—a type of sugar.

6. Against this backdrop, Plaintiff and class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiff and Class Members (defined below) were harmed by paying a price premium for the Products, which they otherwise would not have paid due to the misrepresentations made on Defendants' menu boards, signage, website, and advertising, or would not have purchased the Products at all.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

8. This Court has general personal jurisdiction over Defendant Dunkin' Brands, Inc. because it maintains its principal place of business at 130 Royall Street, Canton, Massachusetts,

within this District, and is therefore at home in this Commonwealth. This Court also has specific personal jurisdiction over Dunkin' Brands, Inc. because Plaintiff's claims arise out of and relate to conduct which it undertook in Massachusetts, including the formulation and naming of the Products and the creation, approval, and dissemination of the Zero Sugar Representations. This Court also has specific personal jurisdiction over Defendant Inspire Brands, Inc. because it purposefully directs Dunkin' Brand's marketing, advertising, and menu development through Dunkin' Brands, Inc.'s Canton, Massachusetts headquarters, issued the Zero Sugar Representations from Boston, Massachusetts, and derives substantial revenue from the sale of the Products in Massachusetts, such that Plaintiff's claims arise out of and relate to its contacts with this Commonwealth.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because Defendant Dunkin' Brands, Inc. resides in this District and a substantial part of the events giving rise to Plaintiff's claims, including the design, approval, and dissemination of the Zero Sugar Representations, occurred in this District. Pursuant to Local Rule 40.1(d)(1)(C), this action is properly assigned to the Eastern Division because the only party residing in this District, Dunkin' Brands, Inc., resides in Norfolk County.

## PARTIES

*Plaintiff Rachael Bondi*

10. Plaintiff Rachael Bondi is an individual consumer who, at all times material hereto, is and was a resident and citizen of Orland Park, Illinois.

11. Plaintiff Bondi purchased Dunkin' Zero beverages in the Tropical Mango, Blackberry Tangerine, Juicy Peach, and Sunzest flavors during the relevant statutory limitations

period. Plaintiff purchased the Products at multiple Dunkin' restaurant locations in Orland Park and Chicago, Illinois.

12. Ms. Bondi reviewed and relied upon Defendants' "Zero Sugar" representations when purchasing the Product. Before each purchase, Plaintiff saw and relied on Defendants' representations, on Dunkin's menu boards and signage, and in Dunkin's advertising, that the Products are "Dunkin' Zero," "zero sugar" beverages containing "0g of sugar." The Zero Sugar Representations were part of the basis of Plaintiff's bargain. She paid a price premium and would not have purchased the Product, or would have paid less for it, had she known that it contained sugar.

13. Plaintiff remains interested in purchasing beverages that truly contain no sugar, including from Dunkin'. However, she cannot know for certain whether Defendants' false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendants continue to make the Zero Sugar Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendants are required to ensure that the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

*Defendants*

14. Defendant Dunkin' Brands, Inc. is a Delaware corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Dunkin' Brands, Inc. owns, operates, and franchises the Dunkin' brand in the United States; develops and formulates the beverages sold under the Dunkin' name, including the Products; and creates, approves, and

disseminates the menu boards, signage, websites, mobile ordering content, press releases, and advertising through which the Products are marketed and sold at Dunkin' restaurants throughout the United States, including in Massachusetts and Illinois. Dunkin' Brands, Inc. operates the dunkindonuts.com website on which the Zero Sugar Representations appear and is the entity that Dunkin' identifies to consumers as the provider of its programs and online services.

15. Defendant Inspire Brands, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. Inspire Brands, Inc. acquired Dunkin' Brands Group, Inc. and its subsidiaries, including Dunkin' Brands, Inc., in December 2020, and since that time has owned, controlled, and directed the Dunkin' brand. Inspire Brands, Inc. participates in and approves the formulation, naming, advertising, marketing, and sale of the Products, and issued the press releases announcing and describing the Products as "zero-sugar" energy drinks.

16. Defendants act directly and through their parents, subsidiaries, affiliates, agents, and franchisees, including their affiliates Dunkin' Donuts Franchising LLC, Dunkin' Donuts LLC, and DD IP Holder LLC, and the franchisees that operate Dunkin' restaurants under Defendants' uniform brand, menu, and marketing standards. At all relevant times, Defendants controlled and approved the formulation, naming, labeling, advertising, and marketing of the Products, and the acts of Defendants' parents, subsidiaries, affiliates, agents, and franchisees in marketing and selling the Products as alleged herein were undertaken at Defendants' direction and on Defendants' behalf. Plaintiff reserves the right to amend this Complaint to name additional parent, subsidiary, or affiliated entities as discovery may warrant.

17. Defendants market and sell the Products throughout the United States, including Massachusetts and Illinois, through Dunkin' restaurant locations. Defendants authorized and

disseminated the allegedly false and misleading "Zero Sugar" representations used to advertise and promote the Products to consumers nationwide, including in Massachusetts and Illinois.

## FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay More for Products That Contain No Sugars

18. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[2] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[3]

19. For decades, federal health authorities have recommended limiting added sugar intake.[4] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[5]

20. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "Zero Sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[4] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[5] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

purchase.

21. Defendant has capitalized on consumer demand for healthier, low- or no-sugar options. It markets Products containing substantial quantities of allulose, a sugar, while labeling and advertising them as "Zero Sugar." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**Defendant's False and Misleading Representations**

22. On March 4, 2026, Defendants announced the nationwide launch of the Products through a press release titled "Dunkin'® Introduces Dunkin' Zero, A Zero-Sugar Energy Drink Made for Everyday Momentum." In promoting the Products, Defendants characterized Dunkin' Zero as "a zero-sugar energy drink made for the in-between moments of the day" and emphasized that a medium-sized beverage contains "20 calories" and "zero grams of sugar."[6] The press release further reinforced these representations under the heading "Meet Dunkin' Zero: Six Flavors. Zero Sugar. All-Day Energy," and featured a statement from Dunkin's chief marketing officer describing the Products as offering "zero sugar energy that delivers bold flavor without compromise."

[6] Dunkin', *Dunkin'® Introduces Dunkin' Zero, A Zero-Sugar Energy Drink Made for Everyday Momentum* (Mar. 4, 2026), https://news.dunkindonuts.com/news/spring-2026 (last visited Oct. 15, 2026).

News Releases > What's New > March 04, 2026

**DUNKIN'® INTRODUCES DUNKIN' ZERO, A ZERO-SUGAR ENERGY DRINK MADE FOR EVERYDAY MOMENTUM**




*New Dunkin' Zero debuts alongside craveable banana-inspired sips, an all-new Berry Acai Refresher and the return of the $6 Meal Deal*

**BOSTON (March 4, 2026)** – Dunkin' is bringing a new kind of energy to the menu. Starting today, the brand introduces **Dunkin' Zero**, a zero-sugar energy drink made for the in-between moments of the day, when coffee has done its job but the day is far from over.

Available in six bold, fruit-forward flavors, Dunkin' Zero delivers 20 calories in a medium and zero grams of sugar. It's a crisp, lightly carbonated sip made for moments when guests want to reset and keep moving. For many, Dunkin' is how the morning starts. Dunkin' Zero picks it up from there, keeping the day going between meetings, on the go, in the carpool line – and into whatever comes next.

**Meet Dunkin' Zero: Six Flavors. Zero Sugar. All-Day Energy**

Dunkin' Zero brings bright, fruit-forward flavor that keeps every sip light and delicious. It's available in six varieties:

**STAY CONNECTED**

Get Dunkin' stories and news delivered to your inbox.

Enter your email | Subscribe



23. Defendants' website repeats the representation for the Product line and for every individual variety. The Dunkin' Zero menu page states: "Available in six flavors, Dunkin' Zero is packed with delicious flavor with 0g of sugar, 145mg of caffeine, and 20 calories in a medium."[7]

[7] Dunkin', *Blackberry Tangerine Dunkin' Zero*, https://www.dunkindonuts.com/menu/categories/iced-refreshers-specialty-tea (last visited Oct. 15, 2026).

menu / Iced refreshers, specialty & tea




**Dunkin' Zero**

Available in six flavors, Dunkin' Zero is packed with delicious flavor with 0g of sugar, 145mg of caffeine, and 20 calories in a medium and contains caffeine from caffeine and guarana.

Nutrition Details

24. Defendants further reinforce the Products' "zero-sugar" misrepresentation through their blog, social media platforms, in-store and drive-through menu boards, and other promotional materials, consistently describing the Products as "zero sugar," "0 sugar," or containing "0g of sugar." These representations are further emphasized by the "Dunkin' Zero" name itself, which conveys to consumers that the Products contain no sugar. Representative examples of Defendants' promotional materials appear below:




25. The Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "Zero Sugar", and "0g Sugar."

26. Contrary to Defendants' representations, the Products contain allulose, as confirmed by Defendants' own Allergen and Ingredient Guide. According to the Guide, each Dunkin' Zero beverage contains sparkling water and one or more flavored syrups that list allulose immediately after water in their ingredient statements. For instance, the Guide identifies the ingredients in the Blackberry Tangerine Dunkin' Zero as follows: "Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend . . ."[8]

[8] The Ingredient Guide is published by Dunkin' at https://www.dunkindonuts.com/nutrition/ (last visited Oct. 15, 2026) and is the written ingredient information Dunkin' makes available to consumers for the Products.

| | |
|---|---|
| PRODUCT NAME | Blackberry Tangerine Dunkin' Zero - Large |
| CATEGORY | Dunkin' Zero Beverages |
| FLAVOR | Blackberry |
| INGREDIENTS | Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D-pantothenate, Niacinamide Manganese Citrate, Zinc Sulfate, Maltodextrin). |
| ALLERGENS | |

[9]

| | |
|---|---|
| PRODUCT NAME | Blushpop Dunkin' Zero - Large |
| CATEGORY | Dunkin' Zero Beverages |
| FLAVOR | Blushpop |
| INGREDIENTS | Sparkling Water; Tropical Energy Zero Flavored Syrup: Water, Allulose, Natural Flavors, Contains 2% or less of: Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Potassium Sorbate (Preservative), Steviol Glycosides, Beta Carotene (Color), Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D-Pantothenate, Niacinamide, Manganese Citrate, Zinc Sulfate, Maltodextrin); Blackberry Tango Energy Zero Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit and Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D-pantothenate, Niacinamide Manganese Citrate, Zinc Sulfate, Maltodextrin). |

27. Defendants' Nutrition Guide further reflects the carbohydrate content of the Products. Specifically, the Guide identifies a medium Blackberry Tangerine Dunkin' Zero as containing 9 grams of Total Carbohydrate, 1 gram of Dietary Fiber, and 20 calories, while a large contains 12 grams of Total Carbohydrate and 25 calories. Depending on the flavor and serving size, the remaining varieties contain between 8 and 13 grams of Total Carbohydrate. Because allulose is listed as a principal ingredient in the Products' flavored syrups, and the Products contain relatively small amounts of other carbohydrate-contributing ingredients, Plaintiff alleges, on information and belief, that a substantial portion of the declared carbohydrate content is attributable to allulose. Accordingly, on information and belief, each medium Product contains approximately 8 to 10 grams of allulose, while each large contains approximately 11 to 13 grams. Nevertheless, Defendants' Nutrition Guide reports "0" grams of

---

[9] *Id.; see also* https://assets.ctfassets.net/ubkcphxhphh0/4M2wXyC5B3yPyD5DlI4MHA/84696105765eb3f1b77160de9f70da36/DD_W7_allergy_ingredient_guide.pdf (last visited Oct. 15, 2026)

Total Sugars and "0" grams of Added Sugars for every Product.[10]

28. "Sugar-Free" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Products' "0g" Nutrition Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Products do, in fact, contain sugar.

**Allulose Is a Sugar**

29. As a monosaccharide, allulose falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[11] No such rulemaking ever occurred.

30. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. 184 F.4th 599, 602,604 (7th Cir. 2026), *rev'g* 789 F. Supp. 3d 584 (N.D. Ill. 2025). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar. The FDA itself, appearing as amicus curiae, agreed that the regulation is unambiguous and that total sugars include all monosaccharides,

[10] https://assets.ctfassets.net/ubkcphxhphh0/3qEP8wMU2IFmLsLyEeWLuc/7bdae361f785d1611d25c4d859f8c721/DD_W7_nutrition_guide.pdf (last visited Oct. 15, 2026)

[11] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

including allulose. *Id*. at 604.

31. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[12] and has noted in multiple FDA filings that "Allulose is a monosaccharide and is classified as a sugar."[13] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[14]

32. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[15] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[16]

33. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

---

[12] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[13] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[14] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[15] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

[16] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

34. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's separate "Sugar-Free", "Zero Sugar", and "0g Sugar" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(1).

35. The "Sugar-Free", "Zero Sugar", and "0g Sugar" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

36. Dunkin' is a restaurant chain with more than 20 locations doing business under the same name and offering substantially the same menu items, and is therefore a "covered establishment" subject to FDA's menu-labeling requirements. 21 U.S.C. § 343(q)(5)(H); 21 C.F.R. § 101.11. Nutrient content claims made for restaurant foods must comply with the nutrient-content-claim regulations, including 21 C.F.R. § 101.60. 21 C.F.R. § 101.13(q)(5). A restaurant may make such a claim only if it has a reasonable basis for concluding that the food meets the definition for the claim. *Id*.

37. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

38. Within Subpart D, section 101.60(c)(1) specifically governs the use of the "sugar free" and "Sugar Free" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free", "free of sugar", "no sugar", "Sugar Free", "without sugar", "sugarless", and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."

39. 21 C.F.R. § 101.60(c)(1)(i)–(ii). These quoted requirements are conjunctive; each must be satisfied.

40. The Products do not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. The allulose in the Products must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

41. FDA's nonbinding allulose guidance does not authorize the challenged claims. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. It does not amend § 101.9(c)(6)(ii), address § 101.60(c)(1), or purport to authorize

a separate "zero sugar" or "0g of sugar" nutrient content claim on a menu board, product name, or advertisement.[17] As the Seventh Circuit explained in rejecting the same defense in *Franco*, the guidance "isn't an interpretation of § 101.9(c)(6)(ii)—it's an announcement of a change in enforcement policy," and "the fact that one sovereign (the United States) indicated that it would not enforce" the regulation "should not have led [the defendant] to believe that the states would take a similar approach." 184 F.4th at 606. Moreover, no rulemaking has issued in the six years since the FDA's nonbinding guidance was published.

42. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

43. Plaintiff does not seek to enforce the FDCA directly. Rather, Plaintiff seeks relief under independently enforceable state consumer-protection laws and common law, including Illinois and Massachusetts provisions that adopt food-labeling requirements identical to federal requirements and independently prohibit deceptive representations. The federal provisions identify the standards Illinois and Massachusetts have adopted and the conduct that renders the Products misbranded under Illinois and Massachusetts law.

**<u>Defendant's Conduct Violates Illinois' Food Labeling Laws</u>**

44. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., prohibits the misbranding of food sold in Illinois. Under 410 ILCS 620/11(a), "[a] food is misbranded" if "its labeling is false or misleading in any particular."

45. In determining whether labeling or advertising is misleading, Illinois law requires consideration of "not only representations made or suggested by statement, word, design, device,

---

[17] *See* U.S. FOOD & DRUG ADMINISTRATION, *The Declaration of Allulose and Calories from Allulose on Nutrition and Facts Labels: Guidance for Industry* 1, 8-9 (Oct. 2020)https://www.fda.gov/media/123342/download (last visited October 16, 2026).

sound or any combination thereof," but also whether the labeling or advertising fails to disclose material facts in light of the representations made. 410 ILCS 620/2.11.

46. The IFDCA also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Federal regulations provide that "sugars" include "all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide and therefore constitutes a sugar under this regulatory definition.

47. Federal regulations further prohibit the use of the terms "Zero Sugar," "Sugar Free", "no sugar", or other terms having the same meaning unless the food contains less than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving. 21 C.F.R. § 101.60(c)(1).

48. Defendants' representations are particularly misleading because they expressly communicate to consumers that the Products contain no sugar, when, in fact, they contain allulose, a sugar under the applicable regulatory definition. Dunkin therefore misrepresents the nature and sugar content of the Products and fails to disclose material facts necessary to prevent Defendant's "Zero Sugar " representations from misleading consumers. *See* 410 ILCS 620/2.11.

49. Accordingly, because the Products bear "Zero Sugar" nutrient-content claims despite containing allulose, the Products are misbranded under Illinois law. Defendant's advertising, distribution, and sale of the misbranded Products therefore violate the IFDCA and the food-labeling requirements incorporated into Illinois law.

50. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable

consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

51. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar; (c) its labels represented that the Products contained no sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

52. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**Defendant's Zero Sugar Claims Injured Plaintiff and the Class**

53. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that the predominant ingredient is a sugar; (c) the fact that the Products are not sugar free; and (d) the fact that the Products are misbranded under federal, Illinois and Massachusetts law when sold bearing the Representations.

54. As an immediate, direct, and proximate result of Defendant's false, misleading,

and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium price for products that were not as represented; (c) were deprived of the benefit of the bargain because the Products they purchased differed from what Defendant warranted; (d) purchased Products worth less than represented; (e) did not receive products that met the expectations Defendant created; (f) purchased Products that Plaintiff and Members of the Class (as defined below) did not expect or consent to receive; (g) purchased Products containing sugar despite intending to buy only products represented to contain none; and (h) with respect to Plaintiff and members of the Illinois Class, purchased misbranded Products that could not lawfully have been sold in Illinois and Massachusetts.

55. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

56. Plaintiff brings this action on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes")

**Nationwide Class**:

> All persons in the United States who, from March 4, 2026 through the date of class certification, purchased one or more of the Products from a Dunkin' restaurant for personal, family, or household use.

**Illinois Class**:

> All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

**Multi-State Consumer Protection Class**:

> All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington

who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use ("Multi-State Class" and together with the Nationwide Class and Illinois Class as "Members of the Class(es)," "Class Member" or "Class(es)").[18][19]

57. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

58. Plaintiff reserves the right to amend the above definitions or to propose classes in subsequent pleadings and motions for class certification.

59. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

60. **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy, as the Members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the

[18] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). Plaintiff has standing to represent the proposed Multi-State Subclass. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

[19] Plaintiff intends to amend this Complaint to assert a claim under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, upon the expiration of the presuit notice period.

pendency of this action by mail and/or publication through Defendants' and their franchisees' transaction, payment-card, loyalty-program, and mobile-ordering records.

61. **Commonality:** Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Products were "Zero Sugar";

c. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and Massachusetts law, with respect to the Illinois Class, Illinois law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiff and the Members of the Class have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Defendants breached an express warranty

i. Whether Plaintiff and the Members of the Class are entitled to statutory damages; and

j. Whether Plaintiff and the Members of the Class are entitled to attorneys' fees and costs.

62. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and

all Members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

63. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

64. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

65. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for Members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

66. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

67. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

68. Defendant's policies and practices challenged herein apply to and affect Class

Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

69. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

70. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure Rule 23.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiff and the Multi-State Consumer Protection Class[20])

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Protection Class against Defendant.

73. The Consumer Fraud Acts of the States in the Multi-State Consumer Protection Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. California (Cal. Bus. & Prof. Code § 17200, et seq.);

b. Florida (Fla. Stat. § 501.201, et seq.);

c. Illinois (815 ILCS 505/1, *et seq.*);

d. Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

[20] Plaintiff reserves the right to amend this list of states after discovery.

e. Michigan (Mich. Comp. Laws § 445.901, *et seq.*);

f. Minnesota (Minn. Stat. § 325F.67, *et seq.*);

g. Missouri (Mo. Rev. Stat. § 407.010, *et seq.*);

h. New Jersey (N.J. Stat. § 56:8-1, *et seq.*);

i. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

j. Washington (Wash. Rev. Code § 19.86.010, *et seq.*)

74. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

75. Defendants' uniform labeling and marketing Representation of the Products were deceptive and materially misleading.

76. Given Defendants' position in the industry and its growing popularity as an established and trustworthy national brand, Plaintiff and reasonable consumers trusted and relied on Defendant's Representations, sustaining damages in an amount to be proven at trial.

77. In addition, Defendants' conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

78. Plaintiff and the other Members of the Multi-State Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Class because Plaintiff and members of the Multi-State Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

**<u>COUNT II</u>**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, et seq. ("ICFA")**
**(On behalf of Plaintiff and the Illinois Class)**

79. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiff brings this cause of action on behalf of herself and the Illinois Class members against Defendant.

81. Plaintiff and the Illinois Class are persons within the context of the Illinois ICFA, 815 ILCS 505/1(c).

82. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

83. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

84. Plaintiff and the proposed Illinois Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

85. The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

86. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

87. Defendant's conduct as alleged constitutes unfair and deceptive acts and practices violating the ICFA. Defendant engaged in deceptive marketing by misrepresenting and omitting material facts regarding the sugar amount in the Product. The Representations were likely to mislead a reasonable consumer.

88. Plaintiff and the other Illinois Class members reasonably relied upon Defendant's Representations, labeling, and omissions alleged herein regarding the Products Zero Sugar claims.

89. Defendant's misconduct, as described herein, occurred primarily and substantially in Illinois with respect to Plaintiff and the Illinois Class, each of whom saw the Zero Sugar Representations at, purchased the Products from, and paid for the Products at Dunkin' restaurants located in Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, violating 815 ILCS 505/1, et seq, by representing that the Product has characteristics or benefits that it does not have.[21] Defendant also did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

90. Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(3).

91. Defendant's uniform marketing claims were deceptive and materially misleading. Defendant named and labeled the Products in a way that would most impact consumer choices and gain market share. Defendant knew that consumers purchasing the Products would reasonably understand the "Zero Sugar" representations to mean that the Products contained no sugar.

92. As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class members have suffered ascertainable money losses caused by Defendant's Zero Sugar Representations. Had they been aware of the true nature of the Products, Plaintiff and Class Members would have paid less for the Products or would not have purchased them.

93. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

---

[21] *See,* 815 ILCS § 505/2; 815 ILCS § 510/2(7).

**COUNT III**
**Breach of Express Warranty**
**Mass. Gen. Laws ch. 106, §§ 2-313 and 2-318**
**(On Behalf of Plaintiff and the Nationwide Class)**

94. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants under Massachusetts law.

96. Defendants are merchants with respect to the sale of the Products, and the Products are "goods" within the meaning of Mass. Gen. Laws ch. 106, § 2-105.

97. Through the Product name and the Zero Sugar Representations on their menu boards, signage, websites, and advertising, Defendants made affirmations of fact and promises to Plaintiff and Class Members that the Products contain zero sugar and 0 grams of sugar, and described the Products as zero-sugar beverages. Those affirmations, promises, and descriptions related to the goods and became part of the basis of the bargain, creating express warranties that the Products would conform to them. Mass. Gen. Laws ch. 106, § 2-313(1)(a)–(b).

98. Defendants breached those express warranties because the Products do not conform to the affirmations, promises, and descriptions: each Product contains approximately 8 to 13 grams of allulose, a sugar.

99. Plaintiff and Class Members are persons whom Defendants might reasonably have expected to use, consume, or be affected by the Products, and lack of privity is no defense to this claim. Mass. Gen. Laws ch. 106, § 2-318.

100. Plaintiff provided Defendants with notice of the breach within a reasonable time after discovering it, including by written demand and by the filing of this Complaint. Defendants have also been on notice of the falsity of the Zero Sugar Representations by virtue of their own ingredient and nutrition information, the FDA's 2016 rulemaking, and the Seventh Circuit's 2026 decision in *Franco v. Chobani, LLC*, 184 F.4th 599. In any event, any failure to give notice does not bar recovery because Defendants have not been and cannot be prejudiced thereby. Mass. Gen. Laws ch. 106, § 2-318.

101. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial, including the difference between the value of the Products as warranted and the value of the Products as delivered. Mass. Gen. Laws ch. 106, § 2-714.

## COUNT IV
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class)**

102. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

103. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants under Massachusetts law.

104. In the course of their business, Defendants supplied false information for the guidance of consumers in their purchasing decisions, namely, that the Products contain zero sugar and 0 grams of sugar.

105. Defendants failed to exercise reasonable care or competence in obtaining and communicating that information. Defendants formulated the Products with allulose, knew or should have known that allulose is a monosaccharide sugar, and had ready access to the FDA's

regulations and rulemaking record identifying allulose as a sugar, yet represented that the Products contain no sugar.

106. Defendants intended that Plaintiff and Class Members rely on the Zero Sugar Representations in deciding to purchase the Products, and Plaintiff and Class Members justifiably relied on them. Defendants' uniform representations were of a kind that reasonable consumers would rely upon, and Plaintiff and Class Members would not have purchased the Products, or would have paid less for them, had they known the truth.

107. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class Members suffered pecuniary loss, including the purchase price or price premium paid for the Products, in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Illinois Class)**

108. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

109. Plaintiff brings this Count on behalf of herself and the Illinois Class.

110. This claim is brought under the law of the State of Illinois.

111. This claim is brought in the alternative to the other Counts. Illinois law and the Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

112. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts, including by making the labeling Representation alleged herein.

113. As a direct result of Defendant's deceptive conduct, it obtained unjust and inequitable benefits at the expense of Plaintiff and the Class Members. Defendant's conduct

violated fundamental principles of justice, equity, and good conscience. Accordingly, it would be inequitable for Defendant to retain the revenues derived from sales induced by its misleading Representations.

114. Plaintiff and the Illinois Class conferred substantial financial benefits upon Defendant, through retail purchases of the Products, which materially differed from the representations made by Defendant.

115. Plaintiff and the Illinois Class seek the imposition of a constructive trust over the profits improperly obtained by Defendant, from which Plaintiff and the Illinois Class may obtain restitution and disgorgement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

a. Certifying the Nationwide, Illinois and Multi-State Classes pursuant to Federal Rule of Civil Procedure 23, and appointing Plaintiff and her counsel to represent the Classes;

b. Declaring that Defendant's conduct constitutes:

i. A violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.);

ii. Violations of substantially similar consumer protection statutes of other states;

iii. Breach of express warranty under Mass. Gen. Laws ch. 106, § 2-313.

iv. Negligent misrepresentation

v. Unjust enrichment;

c. Awarding all actual, compensatory, statutory, and punitive damages to which Plaintiff and Class Members are entitled;

d. Awarding equitable relief, including restitution and/or disgorgement of Defendant's revenues obtained by means of any wrongful act or practice;

e. Enjoining Defendants from marketing and selling the Products with the Zero Sugar Representations and requiring affirmative disclosures sufficient to dispel the public misperception created by Defendants' conduct;

f. Awarding reasonable attorneys' fees and costs, including expert witness fees and expenses as permitted by law;

g. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

h. Granting such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: October 19, 2026

By: */s/ James J. Reardon, Jr.*
James J. Reardon (BBO# 566161)
**REARDON SCANLON LLP**
45 South Main Street, 3rd Floor
West Hartford, CT 06107
T: (860) 944-9455
james.reardon@reardonscanlon.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205 - #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: *klaukaitis@laukaitislaw.com*
*Counsel for Representative Plaintiff and the Proposed Class(es)*

**Pro Hac Vice Forthcoming*